11280.  WELBORN, *alias* FAVER, *v.* THE STATE.

BLOODWORTH, J. The facts in this case are not sufficient to support a conviction of burglary, and the judge erred in overruling the motion for a new trial.

*Judgment reversed. Broyles, C. J., and Luke, J., concur.*

DECIDED APRIL 14, 1920.

Indictment for burglary; from Wilkes superior court — Judge Walker. December 13, 1919.

Jenks Welborn, alias Jenks Faver, was convicted of burglary, under an indictment which charged that he broke and entered the dwelling house of Rich Hurley and stole corn and cottonseed

stored there. In the brief of his counsel it is contended that the conviction was unauthorized because no other evidence than that of an alleged accomplice connected him with the crime. The State relied on testimony as to tracks, to corroborate the testimony of that witness. The alleged accomplice was Tomps Burns, who testified, that he and Jenks Welborn and Mr. Jamie Young went at night to Rich Hurley's pen near Hurley's house and got a white and black spotted pig of Hurley's out of the pen, and he (the witness) and Jenks went through a window into the house, pulling the window open by a string that it had on it, while Young was outside watching for them, and that they got about 15 bushels of corn, cottonseed, a shotgun, a pitchfork, and a saw, and carried the corn, cottonseed, and other things in baskets to Young's house, hauling them in a wagon; that no one else was in the house from which the things were taken, and that he (the witness) pleaded guilty and was serving a sentence for the offense. Rich Hurley testified that in his absence on a Saturday night the house was broken into and cottonseed, corn, a shovel, a shotgun, two bushels of meal, two baskets, and a hog were taken. "They went in at the window, right at the chimney. I saw tracks out there. They looked like three different shoe tracks. There was one that looked like a 5 or a 6 shoe, another that looked like an 8, and then a big one, about 10 or 11. I saw a wagon track where they turned around down there. . . The wagon track was about 100 yards from the house where they turned around, where they stopped and the stuff was carried down there and put in the wagon. . . I just saw three sets of tracks there. I did not know whose tracks they were. I did not search this man's house. . . I investigated all I could. . . I said I didn't have any idea this boy was there." H. A. Smith testified for the State, that on his mother's place Rich Hurley worked a farm; that he (the witness) knew about the stealing of the pig, the corn, and the cottonseed; he went to Mr. Young's and got the pig back, and he got the corn and cottonseed out of Young's crib; they got the cottonseed from Rich, and the corn looked like Rich's corn. "I examined about the pig-pen and house. I went there Sunday morning after that Saturday night. I found three tracks there, . . one track that might have been Mr. Young's, . . another track about an 8 or a 9, and then a large track. That 8 or 9 would fit Jenks' track. Then I found a big

track that would correspond with Thomps Burns'. . . I don't know anything else about it, only I know where they had the wagon and buggy in the woods, where they turned around. . . I saw one small track that would correspond to Mr. Young's, . . then I saw one that looked like an 8 or 9. I don't know whether it would fit that boy's track or not. I never saw his feet in my life to notice them." Harry Smith, sworn for the defendant, testified: " I found this hog up there between Mr. Young's house and Tonch Burns, . . tied in a thicket between the two houses. I never found anything at Jenks' house. I did not search it. . . We found everything at Burns' and Young's place. We got the corn out of Mr. Young's crib. We got the cottonseed out of another crib, right below his house. We tracked them off the plantation; they were going in that direction up the road. It rained that night." The defendant, in his statement at the trial, said that he wore a number 7 shoe, and that he was at home with his wife " that night they were talking about," and knew nothing about " this business." His shoes were put in evidence by his counsel. A witness testified that the defendant's wife was her daughter, and that they stayed all night in the same room with her the Saturday night on which Rich Hurley's hog was stolen. There was conflicting evidence as to the character of the defendant.

*Colley & Colley, Hugh E. Combs,* for plaintiff in error, cited: Penal Code (1910), § 1017; *Butler* v. *State,* 17 *Ga. App.* 522, and citations.

*R. C. Norman, solicitor-general,* contra.